```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- X
                                         :
KEVIN MARTIN,                            :
                     Plaintiff,          :    07 CIV. 7199 (DLC)
                                         :
         -v-                             :    OPINION & ORDER
                                         :
SUPERINTENDENT WILLIAM J. CONNELLY;      :
SECURITY CAPTAIN ALDA PELC; LIEUTENANT   :
MICHAEL; SERGEANT MEDWICK; CORRECTION    :
OFFICER M. RIVERA; and CARROL            :
HARRINGTON, Laundry Supervisor,          :
                                         :
                     Defendants.         :
                                         :
---------------------------------------- X
```

Appearances:

Plaintiff Pro Se:
Kevin Martin
Fishkill Correctional Facility
P.O. Box 1245
Beacon, New York 12508

For Defendants:
Benjamin Lee
Assistant Attorney General
120 Broadway – 24th Floor
New York, New York 10271

DENISE COTE, District Judge:

The defendants have moved to dismiss the complaint filed by Kevin Martin ("Martin"), an inmate at Fishkill Correctional Facility ("Fishkill"), which principally challenges the imposition of a penalty of 37 days in keeplock following a Tier II disciplinary hearing. For the following reasons, the motion is granted.

1

Background

According to his complaint,[1] Martin's incarceration in Fishkill began on December 19, 2006, and within days he was assigned to housing in the medical unit. By January 9, 2007, he had been assigned to work in the laundry facility beginning on January 16, but with restrictions on lifting and standing. (Martin has attached to his complaint a January 26, 2007 medical work status assignment, which reflects a starting date of February 3, 2007 and a lifting restriction.) When Martin reported to the laundry room on January 16 and presented his written assignment, which reflected restrictions on lifting and standing, defendant Harrington, who is a civilian employee, told him to return once he had been cleared by the medical department to work without any restrictions. Martin returned to his housing unit and explained what had happened to the officer in charge.

On March 5, defendant Officer Rivera (identified by Martin as Rivers) issued a misbehavior report against Martin, and with defendant Sergeant Medwick's approval, confined Martin in the Special Housing Unit ("SHU"). As defendant Medwick escorted Martin to the SHU, Martin tried to explain what had happened,

---

[1] A number of documents are attached to the complaint, including the misbehavior report which prompted the disciplinary hearing, a medical work status assignment form, and the documents for Martin's appeal from the hearing officer's sentence.

2

and Medwick threatened him with more serious charges if he did not keep quiet.

Martin received the misbehavior report for the hearing on March 6. It charged Martin with refusing to obey a direct order, verbal harassment, lying, and refusing to comply with a program assignment. Specifically, the misbehavior report alleges that on March 5, Martin had asked Rivera for a pass to the library. When asked why he was not "at his program," Martin explained that he was "medically unassigned." When Martin could not produce a medical disposition form, Rivera ordered Martin to report to his program, but Martin refused, using profanity. Rivera then called the nurse and was told that Martin was not excused from working or attending a program but that his folder contained a limitation on prolonged standing. When Rivera called the laundry, the civilian employee reported that Martin was "still on her payroll."

A Tier II disciplinary hearing commenced before defendant Lieutenant Michael on March 9. After several adjournments and extensions, the hearing convened again on March 27 and 29. According to Martin, Harrington testified in a way that was "inconsistent" with what had actually occurred on January 16.

The hearing officer found against Martin and Martin asserts that he imposed 45 days in keeplock as punishment, to begin as of March 19, and a loss of privileges for 30 days. On April 4,

defendant Captain Pelc addressed Martin's appeal and reduced his punishment by seven days. The ruling explained that Martin had been credited with 14 days of pre-hearing confinement, running from March 5 to 19, and had been given a sentence of 30 days keeplock, running from March 19 to April 18. On April 4, defendant Superintendent William Connolly affirmed that disposition and ruled that the lost privileges would not be restored before the expiration of the 30 day term.

Martin's pro se complaint was received by this district's Pro Se Office on July 17, and filed on August 13. It names the six defendants identified above.

On January 7, 2008, the defendants moved to dismiss the entire complaint on the grounds that: 1) the claims against Rivera, Harrington, and Medwick do not state constitutional claims; 2) Connelly and Pelc were not personally involved in the actions of which Martin complains; 3) 37 days in keeplock does not violate Martin's due process rights; and 4) all defendants are entitled to qualified immunity. In his opposition to the motion Martin has identified the claims on which he wishes to proceed in this litigation and has responded to the defendants' arguments.[2] Martin complains principally that his sentence was illegally imposed since a Tier II sentence cannot exceed 30 days

---

[2] In his opposition, Martin abandons his claim against Sergeant Medwick.

in keeplock and he was held in keeplock for 38 days.[3] He also complains that the hearing was illegally adjourned, that Rivera filed a false misbehavior report, that Harrington gave false testimony, and that Pelc and Connelly should have ruled in his favor when he appealed.

Discussion

When considering a motion to dismiss under Rule 12(b)(6), a trial court must "accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the non-moving party." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007) (citation omitted). At the same time, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to defeat a motion to dismiss." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (citation omitted). A court must apply a "flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative

---

[3] Martin variously asserts that his confinement lasted 37 or 38 days.

5

level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  "[W]hen a plaintiff proceeds pro se . . . a court is obliged to construe his pleadings liberally."  Hemphill v. New York, 380 F.3d 680, 687 (2d Cir. 2004) (citation omitted).  In deciding the motion, a court may consider "any written instrument attached to [the complaint] as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  Sira v. Morton, 380 F.3d 57, 67 (2d Cir. 2004) (citation omitted).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of his constitutional or statutory rights by a person acting under the color of state law.  When asserting a due process claim under § 1983 for improper confinement, "a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004) (citation omitted). "Prison discipline implicates a liberty interest when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'"  Id. (quoting Sandin v. Conner, 515 U.S. 472, 484 (1995)). Confinement in SHU without unusual conditions for a period of up to 101 days is not an atypical hardship.  Id.

It is unnecessary to address whether Martin has sufficiently alleged that his confinement in SHU implicated a liberty interest since his complaint fails to plead a deprivation of due process.  Martin has failed to identify any violation of Department of Correctional Services ("DOCS") regulations concerning either the adjournment of the hearing or the imposition of penalties at the conclusion of the hearing.  Moreover, filing a false misbehavior report or providing false testimony are insufficient standing alone to support a claim.  Finally, there can be no supervisory liability without the identification of an underlying wrong which the supervisor failed to remedy or otherwise caused.  Thus, as explained below, Martin's complaint must be dismissed.

1) Improper Adjournments

Martin contends that the hearing was improperly adjourned and that extensions of the hearing dates were given in violation of DOCS' rules.  DOCS' rules provide that the hearing must commence within seven days and be completed within fourteen days of the misbehavior report unless an adjournment is authorized.

> Where an inmate is confined pending a disciplinary hearing . . . the hearing must be commenced as soon as is reasonably practicable following the inmate's initial confinement pending said disciplinary hearing . . . but, <u>in no event may it be commenced beyond seven days</u> of said confinement without authorization of the commissioner or his designee.

7 N.Y.C.R.R. § 251-5.1(a) (emphasis supplied).  In addition,

> [t]he disciplinary hearing . . . <u>must be completed within 14 days following the writing of the misbehavior report unless otherwise authorized</u> by the commissioner or his designee.  Where a delay is authorized, the record of the hearing should reflect the reasons for any delay or adjournment, and an inmate should ordinarily be made aware of these reasons unless to do so would jeopardize institutional safety or correctional goals.

7 N.Y.C.R.R. § 251-5.1(b) (emphasis supplied).

Rivera issued the inmate misbehavior report on March 5.  A Tier II disciplinary hearing commenced within the requisite 7 day period, on March 9.  After the hearing began, hearing officer Michael adjourned the proceedings on at least two occasions so that Rivera and Harrington could be called as witnesses.  The hearing was also extended on three occasions while hearing officer Michael was on vacation.  As a result of these delays, the disciplinary hearing did not conclude until March 29.  Although the hearing was not completed within 14 days of March 5, the commissioner or his designee authorized the delays and Martin was informed of the reasons for the delays.  Accordingly, based on an examination of Martin's complaint, the attachments which are integral to it, and DOCS regulations, Martin has failed to plead a plausible claim that DOCS violated its procedures for adjourning the disciplinary hearing.

2) Imposing an Illegal Sentence

The gravaman of Martin's complaint is that hearing officer Michael exceeded his authority by imposing a sentence longer than 30 days. In New York, prison disciplinary matters are classified as follows:

> New York DOCS employees issue misbehavior reports to any inmate alleged to have violated prison rules and regulations. A report is forwarded to a reviewing supervisor and the charge is either dismissed or designated as a Tier I, Tier II or Tier III violation. The tier level is determined by several factors, such as the frequency of the inmate's misbehavior and the severity of the conduct. Tier I violations, which are the least severe, are subject to adjudication by a prison sergeant. Tier II hearings are presided over by a lieutenant and Tier III hearings are adjudicated by either a captain, deputy superintendent, senior counselor, steward or education director. DOCS employees having prior involvement in the incident are barred from serving as hearing officers. Inmates found guilty of Tier II or III violations are entitled to judicial review in state court . . . .

Allen v. Cuomo, 100 F.3d 253, 257 (2d Cir. 1996). When conducting a Tier II hearing, a "hearing officer may impose one or more . . . penalties" including "confinement to . . . a special housing unit under keeplock . . . for a period of up to 30 days." 7 N.Y.C.R.R. § 253.7(a)(1)(iii). This penalty is calculated from the date the hearing officer "affirm[s] a charge." 7 N.Y.C.R.R. § 253.7(a)(1)(iii).

Hearing officer Michael imposed 14 days of pre-hearing keeplock, starting on March 5 and ending on March 19, and a penalty of 30 days of keeplock, starting March 19 and ending

9

April 18.[4]  Superintendent Connolly reduced this penalty by seven days, releasing Martin from keeplock on April 11.  Even ignoring this reduction, Martin has failed to plead a plausible claim that DOCS imposed an illegal penalty.  Neither the pre-hearing confinement nor post-hearing penalty exceeded those permitted under DOCS' rules.

Put another way, had the Tier II disciplinary hearing been completed in 14 days it would have concluded on March 19, enabling Martin to begin serving his post-hearing penalty that same day.  The hearing officer credited Martin with the 10 days he remained in keeplock while the hearing was delayed.  As a result, when the hearing concluded on March 29, the hearing officer's ruling required Martin to serve only 20 more days in keeplock.  Martin's principal claim, that he received an illegal sentence, must therefore be dismissed.

3) Filing False Charges and Providing False Testimony

Martin complains that Rivera brought a false accusation against him and gave false testimony when he refused to acknowledge that Martin had shown Rivera a medical release form in January which excused Martin from his work assignment.  He asserts that Rivera waited five or six weeks following their

---

[4] The Tier II disciplinary hearing disposition sheet incorrectly set forth a release date of April 19.  Captain Pelc corrected this error and listed the release date imposed by the hearing officer as April 18.

10

January conversation to file the false misbehavior report. Martin separately complains that Harrington violated his rights when she testified that Martin was not assigned to the laundry until February. He asserts that she was "neglectful and derelict in her duties as the laundry supervisor" for failing to check her files so that she could be better prepared to testify.

Filing a false misbehavior report and giving false testimony do not establish a per se constitutional violation. See Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997); Freeman v. Rideout, 808 F.2d 949, 952 (2d Cir. 1986). There is simply "no general constitutional right to be free from" false accusations. Boddie, 105 F.3d at 862. To violate a plaintiff's constitutional rights "[t]here must be more, such as retaliation against the prisoner for exercising a constitutional right." Id.

Martin's allegations against defendants Harrington and Rivera are insufficient to state a claim under § 1983. Martin does not allege in his complaint, for instance, that Rivera issued the misbehavior report to retaliate against him. In addition, it is undisputed that Martin was granted a hearing and afforded an opportunity to rebut the charges brought against him. Therefore, Martin has failed to plead a violation of his due process rights.

4) Review on Appeal

Finally, Martin asserts that when they reviewed his appeals, Superintendent Connelly and Captain Pelc should have remedied the error that had been committed, and that their review renders them "personally involved" in the wrongful conduct. It is well settled that "[p]roof of an individual defendant's personal involvement in the alleged wrong is . . . a prerequisite to his liability on a claim for damages under § 1983." Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir. 2001).

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) <u>the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong</u>, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)(citation omitted) (emphasis supplied).

The defendants contend that Captain Pelc and Superintendent Connelly were not personally involved because they merely received a "letter" or a "grievance." The personal involvement of these defendants is adequately pleaded through the

12

allegations concerning their respective roles in the appeals process.

Nonetheless, the claims against the two supervisors must be dismissed. "[F]or a supervisor to be liable under § 1983, there must have been an underlying constitutional deprivation." Blyden v. Mancusi, 186 F.3d 252, 265 (2d Cir. 1999). Since Martin has failed to plead an underlying constitutional deprivation, his claims premised on the theory of supervisory liability must be dismissed.

Conclusion

The defendants' January 7, 2008 motion to dismiss is granted. The Clerk of Court shall close the case.

SO ORDERED:

Dated: New York, New York
April 18, 2008

  DENISE COTE
United States District Judge

13

COPIES SENT TO:

Kevin Martin  
(#00-A-2027)  
Fishkill Correctional Facility  
P.O. Box 1245  
Beacon, NY 12508

Benjamin J. Lee  
Assistant Attorney General  
Office of the Attorney General  
120 Broadway  
New York, NY 10271-0332